**Kenneth L. LONE, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civ. No. 50295.**

United States District Court
N. D. California.

April 28, 1969.

Cecil F. Poole, U. S. Atty., Harvey L. Ziff, Asst. U. S. Atty., San Francisco, Cal., for respondent.

Kenneth L. Lone, in pro. per.

ORDER

OLIVER J. CARTER, District Judge.

Pursuant to 28 U.S.C. § 2255, petitioner Lone has filed a motion to set aside a sentence of twenty-five (25) years imprisonment imposed by this Court on January 13, 1964. On that date, petitioner entered a plea of guilty to a single count indictment charging him with violation of several provisions of the Federal Bank Robbery Act, namely, 18 U.S.C. § 2113(a), (d), (e). The indictment charged that on or about November 1, 1963, Lone did wilfully by force and violence take from the United California Bank, San Francisco, money in the sum of approximately $6,719.00. It further charged that he knowingly and wilfully put in jeopardy the lives of several persons by use of a loaded hand gun and in committing the offense did force two persons to accompany him without their consent.

At the time Lone was indicted, 18 U.S.C. § 2113(e) provided:

"Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, *or punished by death if the verdict of the jury shall so direct.*"

Since then, United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) and Pope v. United States, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968) have been decided. These cases held the death penalty provisions of the Federal Kidnapping Act, 18 U.S.C. § 1201(a), and of the Federal Bank Robbery Act, 18 U.S.C. § 2113(e), unconstitutional. Provisions limiting the death penalty to cases in which a jury recommends it serve "to discourage assertions of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial." United States v. Jackson, *supra*, at 581, 88 S.Ct. at 1216.

The question raised by Lone's petition is what effect, if any, do *Jackson* and *Pope* have on the sentence imposed by this Court after accepting Lone's plea of guilty to the indictment charging him with violation of 18 U.S.C. § 2113(a), (d), (e). Before answering this question, the Court should refer to the circumstances surrounding the entry and acceptance of the petitioner's guilty plea.

On November 29, 1963, Lone appeared before this Court with appointed counsel to enter a plea. On January 10, 1964, the defendant again appeared before this Court and entered a plea of guilty. Sentence was imposed after the plea at the request of the defendant. The transcript of the hearing of November 29, 1963, is marked Exhibit "A", appended hereto, and by this reference made a part hereof. Portions of the transcript of the hearing on January 10, 1964, are marked Exhibit "B", appended hereto, and by this reference made a part hereof.

The retroactive effect of *Jackson* is yet unclear. See Sims v. Eyman, 405 F.2d 439 (9th Cir. 1969). Already, conflicting decisions exist among the circuits. In Bailey v. United States, (D.C.Cir. 9/13/68), the court announced that the principles of *Jackson* as applied to the District of Columbia rape statute would affect only those defendants whose trials began after *Jackson* was decided. In Buttcher v. Yeager, 288 F.Supp. 906 (D.C.N.J.1968), the court decided that *Jackson* was not retroactive for purposes of setting aside a non vult plea to a charge of violation of New Jersey's murder statute. In Natale v. United States, 287 F.Supp. 96 (D.C.Ariz.1968), *Jackson* was held retroactive for purposes of deciding that the petitioner had not been charged with a capital offense which would have required that he be charged by indictment rather than by information. In McFarland v. United States, 284 F.Supp. 969 (D.C.Md.1968), the court de-

cided that the effect of *Jackson* may be retroactive but that "the *Jackson* case should not be applied indiscriminately to strike out every judgment heretofore entered in a case where a defendant has entered a guilty plea; the totality of the circumstances in each case should be considered to determine whether there was any denial of due process in the light of the development of the law." *Id.* at 977.

Retroactive application of recently-announced constitutional safeguards to the criminally accused is not a matter of course. *E. g.*, Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1964) (exclusionary rule of illegally-seized evidence under Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), held inapplicable to convictions which had become final before *Mapp* was decided); Tehan v. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966) (rule of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), declaring comment on refusal of the defendant to testify unconstitutional held inapplicable to cases in which judgment of conviction was rendered, availability of appeal exhausted, and the time for petition for certiorari elapsed or was denied before *Griffin* was decided); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) (exclusionary rules of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977 (1964), and of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), held applicable only to cases where the trials have commenced after the respective decisions were announced); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) (rules of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and of Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), involving right to counsel at identification lineups, held applicable only to cases involving confrontations taking place after *Stovall*); De Stefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968) (Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), right to jury trial in serious state criminal cases and Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), right to jury trial for serious criminal contempts, held applicable only to trials commencing before the respective cases were decided); Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968) (Lee v. Florida, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1968), holding evidence violative of § 605 of the Federal Communications Act, is to be applied only to trials in which the evidence is sought to be introduced after the date of Lee); Desist v. United States 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (exclusionary rule of Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) held applicable only to cases in which the prosecution seeks to introduce fruits of electronic surveillance conducted after *Katz* was decided).

On the other hand, retroactive application is justified when the rule announced affects the "very integrity of the fact-finding process" and averts the "clear danger of convicting the innocent." Johnson v. New Jersey, *supra*, at 727, 86 S.Ct. at 1778. *E. g.*, Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L. Ed.2d 508 (1969) (prior testimony of witness absent from jurisdiction, Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)); Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L. Ed.2d 5 (1968) (prior guilty plea offered without aid of counsel, White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed. 2d 193 (1963)); McConnell v. Rhay, 393 U.S. 2 (1968), 89 S.Ct. 32, 21 L.Ed.2d 2 (assistance of counsel at proceeding for revocation of probation and imposition of deferred sentencing, Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L. Ed.2d 336 (1967)); Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968) (extra-judicial confession in joint trial, Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)); Witherspoon v. Illinois, 391

U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) (cause for challenge of jurors generally opposed to capital punishment); Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) (hearing on voluntariness of confession); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (assistance of counsel on appeal); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (assistance of counsel at trial); Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) (assistance of counsel at certain arraignments); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (transcripts to indigents on appeal).

In determining whether the rule of Jackson v. United States, *supra,* is retroactive, its effect must be clearly defined. Death penalties actually imposed are invalid if they fall within the infirmity announced in *Jackson.* Also, convictions of defendants who waive jury trials on charges which subject them to the death penalty upon recommendation by the jury, are open to attack as being unnecessarily encouraged by the jury's death penalty power. Thus, three different classes of defendants may take advantage of *Jackson*: defendants who plead guilty, defendants who are tried and convicted by a judge, and defendants who are convicted by a jury and sentenced to death. Parker v. United States, 400 F.2d 248 (9th Cir. 1968).

■ This Court is asked to decide the issue of retroactivity only with respect to Jackson as it applies to those who have pled guilty. The Court is of the opinion that *Jackson* is not retroactive in this respect. This decision is reached despite the fact that *Jackson* may be retroactive for purposes of those defendants who are sentenced to die.[1]

■ It is well-settled that in criminal litigation concerning constitutional claims, a rule in the interest of justice may be made prospective where the exigencies of the situation require such an application. Johnson v. New Jersey, *supra,* at 726–727, 86 S.Ct. 1772. "The criteria guiding resolution of the question implicates (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." Stovall v. Denno, *supra,* at 297, 87 S.Ct. at 1970.

The death penalty provision of 18 U.S.C. § 2113(e) is unconstitutional because it deters exercise of the Sixth Amendment right to demand a jury trial. United States v. Jackson, *supra,* at 581, 88 S.Ct. 1209. In this respect, the purpose to be served by the ruling of *Jackson* is identical to those served by the decisions of Duncan v. Louisiana, *supra,* and Bloom v. Illinois, *supra.* It has already been decided that this factor favors only prospective application. See De Stefano v. Woods, *supra,* at 633,[2] 88 S.Ct. 2093.

The other two factors require discussion because they are not identical to

1. The Supreme Court has indicated that death penalties subject to the *Jackson* infirmity are void retroactively. In Pope v. United States, *supra,* the Court remanded the case for proceedings in conformity with *Jackson.* In *Pope*, the petitioner had been convicted by a jury and sentenced to death under the Federal Bank Robbery Act, 18 U.S.C. § 2113(e). Although *Pope* was decided through direct attack on petition for writ of certiorari, the petitioner had been sentenced prior to the date of *Jackson.* Cf. Desist v. United States, *supra.* In neither event, whether death penalties actually imposed before *Jackson* are affected or not is not the question this Court must decide. However, the decision today is reached

considering the fact that retroactivity may be required with respect to sentences of death imposed, without actually deciding the point.

2. The Court is aware of the fact that "retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based." Johnson v. New Jersey, *supra,* at 728, 86 S.Ct. at 1778; Desist v. United States, *supra,* at 249, 89 S.Ct. 1030. However, the reasoning of *De Stefano* with respect to the values implemented by the right to jury trial, applies equally to this case and is adopted herein.

*De Stefano*, since the Sixth Amendment right to a jury trial has always been guaranteed to defendants in federal criminal cases. Although the right to a jury trial is not a recent rule, death penalty provisions limited to jury recommendation to avoid mandatory capital punishment have long been relied upon as valid.[3] Law enforcement officials and the federal courts have heretofore proceeded on the premise that the Constitution did not forbid capital punishment that was imposable only upon recommendation by the jury. The *Jackson* ruling did not indicate that it was foreshadowed in prior Supreme Court cases.[4] To require an opportunity to plead anew to all defendants who entered guilty pleas to charges of violating 18 U.S.C. § 2113(e) would have too devastating an impact on the administration of our criminal laws.[5] This factor, weighed with the purpose to be served by the *Jackson* principle leads to the conclusion that purely prospective application is required.

The death penalty provision of the Bank Robbery Act is unconstitutional for another reason, namely, that its effect is to "discourage assertion of the Fifth Amendment right not to plead guilty." United States v. Jackson, *supra*, at 581, 88 S.Ct. at 1216. A coerced guilty plea presents a clear danger of convicting the innocent by needlessly avoiding the fact-finding processes guaranteed to the criminally-accused. However, the infirmity of the death penalty provision involved here "is not that it necessarily *coerces* guilty pleas and jury waivers but simply that it needlessly *encourages* them. * * * Thus the fact that the [Act] tends to discourage defendants from insisting upon their innocence and demanding trial by jury hardly implies that every defendant who enters a guilty plea to a charge under the Act does so involuntarily." *Id.* at 583, 88 S.Ct. at 1217. In fact, District Judges are constitutionally required to determine that a defendant's guilty plea is truly voluntary. McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). It has long been recognized that "courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927). A remedy is always available to a defendant to move the court to set aside a judgment of conviction and permit withdrawal of a plea "to correct manifest injustice." Fed.Rules of Crim. Proc. 32(d). Furthermore, a defendant charged with violation of 18 U.S.C. § 2113(e) has the alternative of requesting a trial before the judge after a jury trial is waived. A guilty plea is not the necessary result of waiver of trial by jury.[6]

3. Death penalty provisions for the Federal Bank Robbery Act and for the Federal Kidnapping Act were enacted in 1934. 48 Stat. 783 (1934); 48 Stat. 781 (1934).

4. A careful reading of Jackson and independent research by this Court suggest that the issue raised was considered for the first time in *Jackson*.

5. "The great majority of all defendants against whom indictments or informations are filed in the federal courts plead guilty. Only a comparatively small number go to trial." Notes of Advisory Committee on Rules, Fed.Rules Crim. Proc. 11 (1969 Supp.) See also, Federal Offenders in the United States District Courts, Administrative Office of the U. S. Courts (1963, 1964, 1965, 1966, 1967).

6. The Court does not mean to intimate that a defendant may demand a trial by judge. To the contrary, it has been said that the "Constitution neither confers nor recognizes a right of criminal defendants to have their cases tried before a judge alone * * *." Singer v. United States, 380 U.S. 24, 26, 85 S.Ct. 783, 785, 13 L.Ed.2d 630 (1965). Even if defendants may not be entitled to court trials as a matter of right, they are not foreclosed from requesting them. See Fed. Rules of Crim.Proc. 23(c). If a defendant's fear of the jury's death penalty power is the factor which substantially motivates him into waiving a jury trial, it is reasonable to expect a request for a trial before a judge. This is especially true for defendants represented by counsel. If such a request had been made and denied by the court, it would be a

Certainly, it cannot be said that trials before judges alone are "unfair or that a defendant may never be as fairly treated by a judge as he would be by a jury." DeStefano v. Woods, *supra*, at 633, 88 S. Ct. at 2095.

This reasoning is unquestionably insufficient to avoid recognizing the unconstitutionality of the Bank Robbery Act's death penalty.[7] However, for purposes of determining retroactive application of the rule, it is important to consider the extent to which "other safeguards are available" to protect the integrity of the process which determines guilt or innocence. See Johnson v. New Jersey, *supra*, at 729, 86 S.Ct. 1772. This is true because the question of retroactivity is necessarily a "matter of degree." *Id*. at 729, 86 S.Ct. 1772.

The extent to which the federal courts have relied on the validity of guilty pleas accepted in this manner and the impact on the administration of justice that retroactive application would have are already discussed above. Thus, all factors lead to the conclusion that purely prospective application of *Jackson* is required.[8]

■ Petitioner filed this motion pursuant to 28 U.S.C. § 2255 to set aside his sentence as one imposed in violation of law. Although *Jackson* is not retroactive, this Court is authorized to set aside the judgment of conviction and permit the defendant to withdraw his plea of guilty to correct manifest injustice. Fed.Rules Crim.Proc. 32(d). In doing so, the Court looks to the "totality of the circumstances" surrounding the petitioner's plea of guilty and his sentencing. See Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); Foster v. State of California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). The Court decides that petitioner was not treated unjustly and accordingly, his judgment is not entitled to be set aside.

■ Petitioner pled guilty to a single-count indictment which charged violation

---

factor to consider in determining whether the guilty plea had been coerced to the extent that the court should set it aside under Rule 32 of the Fed.Rules of Crim. Proc. to avoid manifest injustice. Also, the fact that a defendant may not have been aware of the availability of a trial by judge is a factor to consider in making that determination.

It should be noted here that Singer v. United States, *supra*, does not stand for the absolute proposition that a defendant is not constitutionally entitled to a trial by judge. In *Singer*, the Supreme Court limited its holding by saying, "We need not determine in this case whether there might be some circumstances where a defendant's reasons for wanting to be tried by a judge alone are so compelling that the Government's insistence on trial by jury would result in the denial to a defendant of an impartial trial." *Id*. at 37, 85 S.Ct. at 791. It may well be argued that a defendant who was denied a trial by judge in the *Jackson* situation made the request under circumstances so compelling that the defendant was denied a right of constitutional magnitude.

7. "The power to reject coerced guilty pleas and involuntary jury waivers might alleviate, but it cannot totally eliminate,

the constitutional infirmity in the capital punishment provision of the Federal Kidnapping Act." United States v. Jackson, *supra*, at 583, 88 S.Ct. at 1217.

8. In *Jackson*, the court at page 583, 88 S.Ct. at p. 1217 said, "the fact that the Federal Kidnaping Act tends to discourage defendants from insisting upon their innocence and demanding trial by jury hardly implies that every defendant who enters a guilty plea to a charge under the Act does so involuntarily." This language is some indication that the Supreme Court would hold against retroactive application after balancing the factors announced in Stovall v. Denno, *supra*.

It may be contended that this language merely indicates the Court's intention to have the voluntariness of all past guilty pleas scrutinized on an individual basis, as opposed to having them automatically declared void. It can hardly be said that the jury's death penalty power was not substantially taken into account by practically all defendants who pled guilty to the charge of violating 18 U.S. C. § 2113(e). Thus, retroactive application of *Jackson* may well result in setting aside practically all guilty pleas entered to such charges.

of 18 U.S.C. § 2113(a), (d), (e). On December 17, 1963, petitioner originally expressed a reluctance to plead guilty to the charge of violating subsection (e) of the Bank Robbery Act. This reluctance was due to the petitioner's feeling that the "kidnapping" committed while in perpetration of the robbery "wasn't committed willingly." In all other respects, his offered plea of guilty was entered with full understanding of the nature of the charges and of the consequences of his plea.[9] The Court refused to accept a guilty plea on this basis and entered a plea of not guilty. On January 10, 1964, petitioner again presented himself to this Court with counsel to change his plea to guilty. At this time, he expressed full understanding of all the charges against him. The Court independently determined the plea to be voluntarily made with full understanding, and complied with Rule 11, Fed.Rules of Crim.Proc. Furthermore, the sentence imposed was within the maximum penalty provided in subsection (d) of the Act. See Exhibit "B", page 868. Thus, there is no basis on which petitioner may now claim that his imprisonment is the result of manifest injustice.

It is hereby ordered that the petitioner's motion to vacate judgment is denied.

EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

BEFORE: HON. OLIVER J. CARTER, JUDGE

- - -O- - -

UNITED STATES OF AMERICA,
　　　　　　　　　　Plaintiff,

　　　　　　-vs-

KENNETH LEO LONE,
　　　　　　　　Defendant.

No. 39405

PLEA

December 17, 1963

APPEARANCES:

For the Government: UNITED STATES ATTORNEY
By: FREDERICK J. WOELFLEN
Asst. U. S. Atty

For the Defendant: VALENTINE C. HAMMACK

THE COURT: Defendant is present with counsel, Mr. Hammack. Is the defendant ready to enter his plea?

MR. HAMMACK: Yes, Your Honor. May I make a statement? Mr. Smiroff was appointed with me in this case. He is still on trial out of the city. I talked to him yesterday on the phone at some length, and he concurs with the action we are ready to take this morning.

THE COURT: What is the action you are prepared to take?

9. The record is abundantly clear that petitioner's plea was offered voluntarily and with full understanding of the charges of violating subsections (a) and (d) of the Act. See Exhibit "A".

MR. HAMMACK: We are ready to plead, your Honor.

THE COURT: What will that plea be, guilty or not guilty?

MR. HAMMACK: The plea will be guilty, your Honor.

THE COURT: The plea will be guilty? The indictment is in one count and charges a violation of Title 18 of the United States Code, Section 2113(a) (d) and (e), armed bank robbery.

Now, Mr. Lone, your counsel indicates that you intend to enter a plea of guilty to this indictment which charges you in one count with violation of three subdivisions of that particular statute. Before I accept a plea of guilty I want to be sure that you understand the nature of the charges against you, and that you freely and voluntarily make a plea of guilty, and therefor I am going to ask you some questions:

First of all, have you had an opportunity to go over the indictment with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: And do you understand the nature of the charges made against you?

THE DEFENDANT: Yes, sir.

THE COURT: This indictment charges that on or about the 1st of November, 1963, in San Francisco, you did by force and violence and intimidation willfully and knowingly take from the presence of Eileen Dunlap and Carol Curry money in the sum of approximately $6719.00, said money belonging to and in the care, custody, control, management and possession of the United California Bank of San Francisco; the Nob Hill office; and that Eileen Dunlap and Carol Curry were employees of the bank and acting in such capacity at the time.

Then, it also charges that at the same time and place you did knowingly and willfully put in jeopardy the lives of Eileen Dunlap and Carol Curry, Leonard F. Arregger, Valdimar Ansalvi, by the use of a dangerous weapon, to-wit, a loaded hand gun; and at the same time and place you did in committing the offense described in this indictment, force Ronald Paul Von der Porten and Gale Llewellyn Swan to accompany you, without the consent of said Ronald Paul Van der Porten and Gale Llewellyn Swan.

Now do you understand those three basic charges that are made against you?

THE DEFENDANT: Yes.

THE COURT: Now, then, is there any doubt in your own mind about your guilt of the charges that are made in this indictment?

THE DEFENDANT: No, sir.

THE COURT: I want you to be sure about this because I have to make a decision as to whether to permit you to plead guilty, and I am not going to permit a man who thinks he didn't do anything, didn't do these acts, to plead guilty.

THE DEFENDANT: Well, the bank robbery was committed willingly, but the kidnapping wasn't committed willingly.

THE COURT: What is the position of the government in this matter?

MR. WOELFLEN: We will stand on the indictment, your Honor, and if we intend to go to trial we intend to prove each element charged in the indictment.

THE COURT: Well, now, Mr. Lone, let's explore this because I want you to be clear-cut in your own mind and not to enter a plea to something you didn't do, or don't think you did. Is there some question of terms that disturbs you, because I take it you frankly admit using a weapon in order to rob the bank?

THE DEFENDANT: Yes, sir, but when I was shot, I don't know, you lose your head. I don't know what other gues would have done. When I was shot I lost my head. I wasn't in my right mind then.

THE COURT: Well, Mr. Hammack, in view of that statement where are we?

MR. HAMMACK: I am perfectly willing to do whatever the defendant wishes to do. If he wishes to get the permission of the Court to withdraw his plea of Guilty and change to Not Guilty I am ready to go to trial.

THE COURT: He hasn't pleaded Guilty yet.

MR. HAMMACK: I wish the record to show that I wish to do everything I possibly can for the defendant. He must make the decision.

THE COURT: Well, he takes the position that—I take it, Mr. Lone, your position is that you either don't know what you did insofar as the—what you call "kidnapping" is concerned, that is, requiring these people to go with you against their will, or that whatever you did was not your voluntary act?

THE DEFENDANT: Yes, sir.

THE COURT: If you plead guilty, of course you are pleading guilty to all of the charges, and the United States Attorney says that he intends to proceed. As a matter of fact, Mr. Woelflen, aren't these separate charges in the same indictment?

MR. WOELFLEN: No, I don't believe they are, your Honor. It is my understanding they are merged into the indictment insofar as the penalty aspects are concerned. I think we had a discussion about this case here before your Honor approximately a year ago when we were discussing a bank robbery case. It was my understanding at that time, from the research that your Honor undertook and I undertook, that these were part and parcel of the same offense.

MR. HAMMACK: That is true, your Honor, and there is no objection to pleading the anti-trust provisions thereof and dismissing the others. It is true the lesser are merged in the greater. No doubt about that. I have discussed this with the United States Attorney, of course, your Honor, and I know his attitude on the matter. I am perfectly satisfied that the defendant could plead, say, to paragraphs 3 and 4, and certainly no violence would be done so far as a matter of law in dismissing 5.

THE COURT: But I don't have any authority to dismiss any matter which is in issue.

MR. WOELFLEN: I would say frankly, your Honor, if that would be the procedure, that the defendant was going to plead to bank robbery we would still proceed to trial on the remaining portion of the indictment.

THE COURT: That's the point. I don't think it saves anything so far as plea is concerned. As a matter of fact, I don't know whether I would permit the defendant to plead partially. He might say, "I don't contest this" in front of a jury, if that's the situation, and take his chances on the other. That's up to him. But I don't think that he should plead to one and go to trial on the other. I don't think it helps him any to do that.

MR. HAMMACK: No, your Honor, I would not approve that.

THE COURT: If he isn't willing to accept his personal responsibility for the whole thing he should plead Not Guilty. As I say, if he wants to take the position in front of the jury, "I make no contest about that bank robbery, but I resist that portinon of the charge thay says I kidnapped these people." That is a matter for him to determine at the time of trial, but I think he should reserve his right up to the time of trial. You should be advised by your counsel as to how to proceed to trial, and once you understand what your are doing, why, you can proceed on that basis.

THE DEFENDANT: Your Honor, you mean I can't plead Guilty to the armed robbery?

THE COURT: Not here. You might later on. Because this is all merged into one course of conduct and it's one indictment. What I am going to say to you is, if you are going to resist any part of it, including kidnapping, you should plead Not Guilty to the whole thing; then at the time of trial if you want to reduce the amount of evidence that is going to be involved, if you want to say you make no contest as to the bank robbery itself, that's a matter to be determined then. But your rights will be preserved if you plead Not Guilty. By pleading Guilty to the bank robbery and pleading Not Guilty to the kidnapping, you don't gain any advantage by that. All I want you to do is protect your rights, whatever they are, and for that reason I say— In other words, if you plead Guilty to Items 3 and

4 in the indictment and Not Guilty to Item 5, I can't dispose of Item 5 for you. That is the charge you call "kidnapping". You are still faced with that. So it seems to me that if you are going to plead Not Guilty to that you should plead Not Guilty to the whole thing and then do what you want at the time of trial.

But I don't think that I should permit you to plead Guilty to this indictment if there is one part that you don't think you are guilty of. Particularly Item 5, and I will read it again, was that portion which says that on or about the 1st day of November, 1963, in San Francisco—the same time and place, that you did in committing the offense, that is the bank robbery, force Ronald Paul Von der Porten and Gale Llewellyn Swan to accompany you without the consent of said Ronald Paul Von der Porten and Gale Llewellyn Swan.

Now, I don't know what the complete basis for your position is. You intimate to me that while the act occurred, that you were, you say, because of the circumstances under which it occurred, you weren't mentally responsible for what you did. Is that right?

THE DEFENDANT: Yes, sir.

THE COURT: The only thing to do, then, is to test that. The United States says they believe you were guilty of the offense charged and intends to prosecute. Now, until you can tell me you accept your responsibility for that course of conduct which is stated in the indictment, why, I can't let you plead Guilty to the charge. Apparently at the moment, at least, you feel you can't accept responsibility.

THE DEFENDANT: That is correct.

THE COURT: You are being frank about it. I don't know whether you are being very realistic in your understanding, but that is a matter for you to determine, not me. You are going to have to be the person to make this decision and the person who accepts the responsibility so that it will govern your attitude, or govern your desire to make a plea.

Well, then, I would suggest that you plead Not Guilty in this matter.

MR. HAMMACK: Yes, your Honor. That's the way we will do it, your Honor.

THE COURT: All right, then, Mr. Clerk, take the plea of the defendant to the indictment.

THE CLERK: Mr. Lone, to the one count indictment on which you have heretofore been arraigned, what say you, Guilty or Not Guilty?

THE DEFENDANT: Not guilty.

THE CLERK: Plea of Not Guilty, your Honor.

THE COURT: All right, how long will it take to try?

MR. WOELFLEN: It will take a week, your Honor.

MR. HAMMACK: Yes, a week, your Honor.

THE COURT: Is the death penalty involved in this?

MR. WOELFLEN: Yes, your Honor.

MR. HAMMACK: It is when they go to trial before a jury, your Honor.

MR. WOELFLEN: The jury can direct it.

THE COURT: Well, there are two counsel already appointed. When would you be able to go to trial?

MR. WOELFLEN: We are running a tight schedule, your Honor. I was trying to look at the calendar. I don't know what Mr. Hammack's or Mr. Smiroff's situation is.

MR. HAMMACK: Well, I cannot at this moment speak for Mr. Smiroff, your Honor, but I am running a tight schedule myself. Let's say the 20th. January 20th would be the earliest possible date with me, and I think that would probably meet with Mr. Smiroff's approval.

THE COURT: Well, certain things have to be done, and the witnesses have to be identified. I think a list of the jurors has to be in your possession, and so on. There are other items that have to be done, but in a possible death penalty case it's a little more detailed and complicated, so I think you should take a little more time to prepare for it. Now, whether the defendant wants to shorten the matter up insofar as preparing—

MR. WOELFLEN: Your Honor, I would say that even though the defendant did not contest anything, it would still be a necessary element to establish the bank robbery.

THE COURT: I think he could admit it. But I am going to leave that for the trial judge to determine.

MR. HAMMACK: We are not prepared to commit ourselves now.

THE COURT: No, and I am not going to ask you to, I am not going to have him make any decisions now that might prejudice him at the time of trial. That is a matter he can determine, however, and if he decides to take this course of conduct, say, to the extent that this can shorten it up, it will.

Well, Mrs. Blair, when can we first get this matter on?

CALENDAR CLERK: Monday, February 3rd or February 10th.

THE COURT: How about February 3rd?

MR. HAMMACK: That would be a good day for us, your Honor.

MR. WOELFLEN: Satisfactory.

THE COURT: All right, February 3rd for trial. And we will try to see that you receive an expeditious trial at that time.

EXHIBIT "B"

BEFORE: HON. OLIVER J. CARTER, JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

FILED
Feb. 12, 1965

UNITED STATES OF AMERICA,
 Plaintiff
 vs.
KENNETH LEO LONE,
 Defendant

JAMES P. WELSH, Clerk

Criminal
No. 39405

APPEARANCES:

For the Government:
 FREDERICK J. WOELFLEN, ESQ.
 Ass't. United States Attorney
 U. S. Post Office Building
 Seventh & Mission Streets
 San Francisco, California

For the Defendant:
 Valentine C. Hammack, Esq.
 1095 Market Street
 San Francisco, California
 Andrew P. Smirnoff, Esq.
 465 California Street
 San Francisco, California

TRANSCRIPT
OF
PROCEEDINGS

Friday, January 10, 1964

MORNING SESSION: 10:00 o'clock A. M. Friday, January 10, 1964:

THE CLERK: Criminal No. 39405, United States vs. Kenneth Leo Lone.

MR. WOELFLEN: Your honor, this case was previously set for trial on February 3rd, 1964. I have been advised that at the request of counsel, this defendant has been brought into court in order to change his plea.

MR. HAMMACK: That's right, if it please the court. The defendant at this time, with permission of the court, wishes to withdraw the plea formerly made of not guilty and to change the plea to guilty.

THE COURT: The record will show that the defendant is present in court with both of his court appointed counsel, Mr. Valentine Hammack and Mr. Andrew Smirnoff, and that on December 17th, the defendant entered a plea of not guilty to the charge and that the matter was set for trial on February 3rd. At the time of the discussion of the case and the plea of not guilty, the defendant had announced his intention to plead guilty, but when interrogated by the court as to whether or not he believed himself to be guilty of the offense, he then stated that he did not believe himself to be guilty of one part of the offense, namely, that offense which described what is commonly known as kidnapping, and it is set forth in paragraph 5 of the indictment which reads: "At the time and place set forth in paragraph 3 of this indictment the defendant in committing the offense described in this indictment force Ronald Paul Vondervorten and Gayle Llewellyn Swan to accompany him without the consent of the said Ronald Paul Vondervorten and Gayle Llewellyn Swan." Now, this is commonly described as kidnapping and carries with it a sentence of up to life or a possible death penalty if there is a jury trial and the jury would recommend the death penalty. And, of course, this is the most serious, penaltywise, this is the most serious aspect of this offense.

When I ascertained that this defendant had some question in his mind as to his guilt of that phase of the charge—at that time he advised me he had no doubt as to his guilt as to the so-called bank robbery by force and the putting of the lives of the bank personnel in jeopardy by the use of a firearm. He believed himself to be guilty of those parts of the offense, but not the third one.

Now, Mr. Lone, your counsel now indicates that you intend to plead guilty to the whole indictment, including the kidnapping aspects of the indictment as well as the other two aspects, namely the bank robbery by force and violence and putting of lives in jeopardy, is that correct?

MR. HAMMACK: That is correct, your honor.

THE COURT: I'd like Mr. Lone to answer.

DEFENDANT LONE: Yes, sir.

THE COURT: Now, Mr. Lone, before I permit you to enter plea of guilty I must ascertain first of all that you understand the nature of the charges.

DEFENDANT LONE: Yes, sir.

THE COURT: All right. Now, you have had a chance to go over this indictment with your attorneys very carefully have you not?

DEFENDANT LONE: Yes, sir.

THE COURT: And you understand all of the aspects of the charge now?

DEFENDANT LONE: Yes, sir.

THE COURT: And you are in full possession of your faculties so that you can understand, is that correct?

DEFENDANT LONE: Yes, sir.

THE COURT: Now, I have to ask you again, is there any doubt in your own mind of your guilt of all of the charges that are made in the indictment?

DEFENDANT LONE: No, sir.

THE COURT: I know you have had some problem in accepting your guilt of the third aspect, that is, what is commonly called the kidnapping phase of the charge. Now, have you had a chance to fully consider that and discuss it in order to determine whether or not you could in good conscience and good faith enter a plea of guilty to that charge?

DEFENDANT LONE: Yes, sir.

THE COURT: And you believe that you can and should, is that correct?

DEFENDANT LONE: Yes, sir.

THE COURT: Well, I want the record to be clear on that. And then, you still have the same opinion and belief that you had about the other two aspects of the charge, the bank robbery by force and violence and the putting in jeopardy the lives of certain bank employees?

DEFENDANT LONE: Yes, sir.

THE COURT: I am not going back into that detail. We have discussed it before and at that time you advised the court that you were guilty of that and you are still of that view, is that correct.

DEFENDANT LONE: Yes, sir.

THE COURT: Now, you make your plea freely and voluntarily?

DEFENDANT LONE: Guilty, your honor.

THE COURT: All right, do you make it freely and voluntarily?

DEFENDANT LONE: Yes, sir.

THE COURT: And has anybody made any threats against you or offered you any promises or immunities to make this plea?

DEFENDANT LONE: No, sir.

THE COURT: And you understand that if a plea of guilty is made, the court has the power to give a sentence of up to life imprisonment.

DEFENDANT LONE: Yes, sir.

THE COURT: And also that it must make a minimum sentence of at least ten years as I understand it.

DEFENDANT LONE: Yes, sir.

THE COURT: You understand that?

DEFENDANT LONE: Yes, sir.

THE COURT: And you make your plea with that knowledge?

DEFENDANT LONE: Yes, sir.

THE COURT: Then Mr. Hammack and Mr. Smirnoff do you believe that the interests of justice would be served by a plea of guilty in this case by the defendant here?

MR. HAMMACK: Yes, your honor.

THE COURT: And furthermore, do you believe after your careful investigation which I know you have made, do you believe that this man has no legitimate or valid defense to any aspect of the indictment?

MR. HAMMACK: That is our opinion, your honor.

THE COURT: Well, by a plea of this manner too Mr. Lone, you remove the possibility of the death penalty—

DEFENDANT LONE: Yes, sir.

THE COURT: —in this situation and I am sure you are aware of that. Well, then, if there is no other objection and you desire to enter your plea, I will instruct the clerk to take first of all the withdrawal of your plea of not guilty and then the entry of your plea of guilty. Are you ready to proceed with that?

DEFENDANT LONE: Yes, sir.

THE COURT: All right. Mr. Clerk, would you take the withdrawal of the plea of not guilty.

THE CLERK: Mr. Kenneth Leo Lone, to the indictment which you have heretofore plead not guilty, do you at this time withdraw that plea of not guilty?

DEFENDANT LONE: Yes, sir.

THE CLERK: What say you now to the same indictment, guilty or not guilty?

DEFENDANT LONE: Guilty.

THE CLERK: Plea of guilty, your honor.

\* \* \* \* \* \*

THE COURT: \* \* \* Now, I intend to impose a substantial prison sentence, but I don't intend to impose any maximum and having said that, is there anything further you have to say before judgment and sentence are pronounced?

DEFENDANT LONE: No, sir.

THE COURT: Well, the statute here has three sub-divisions in it and the maximum sentence for a bank robbery with force and violence and particularly with putting lives in jeopardy is 25 years and the kidnapping aspect I think is part and parcel of this other conduct that you started and I think the 25 years would be an ample punishment for the kidnapping under the circumstances that occurred here. Your kidnapping was not a designed kidnapping to take people and hold them for ransom and I don't think that the statute intended it to cover that. There is another statute that covers that. This statute has to do with kidnapping in the course of a bank robbery or attempting to escape apprehension or attempting to escape after you are in custody and of course it has very serious implications, but I think in this case that the 25 years maximum indicated on the other two counts would be a sufficient sentence in order to accomplish the purposes I have indicated and that is, to keep you in an institution for a sufficient length of time so that society will be protected and to give you an opportunity to readjust your life to some extent. Now, this is my intention and if there is nothing further to be said, I will pronounce judgment and sentence.

MR. HAMMACK: The matter is submitted, your honor.

THE COURT: Then it is the judgment and sentence of the court Mr. Lone that you be imprisoned at an institution to be designated by the Attorney General for a period of 25 years and I will remand you to the custody of the marshal for the service of that sentence.