418 F.2d 332
 UNITED STATES of America ex rel. Charles Lee ALLISON, Appellant,
v.
STATE OF NEW JERSEY.
 No. 17394.
 United States Court of Appeals Third Circuit.
 Argued April 22, 1969.
 Decided October 29, 1969.
 
 Darryl B. Deaktor, Goodis, Greenfield, Narrin & Mann, Philadelphia, Pa., for appellant.
 Bernard F. Conway, Charles M. Egan, Jr., Morris County Prosecutor, Morristown, N. J., O'Donnell, Clifford, Conway & Leary, Morristown, N. J., for appellee.
 Before HASTIE, Chief Judge, and FREEDMAN and STAHL, Circuit Judges.
 OPINION OF THE COURT
 STAHL, Circuit Judge.
 
 
 1
 The principal issue in this appeal is the complete retroactivity vel non of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Somewhat surprisingly the Supreme Court has not had occasion to speak directly on this aspect of Massiah, although virtually every other major decision in the area of criminal procedure has run the gauntlet of retroactive application. While the Court has tacitly given limited retroactivity to Massiah in cases which were still on direct appeal on May 18, 1964, the date of the decision,[1] we are faced with a trial which took place long before Massiah, or even Gideon,[2] became part of the lexicon of the right to counsel. We recite the facts of this case now.
 
 
 2
 Appellant Allison was sentenced in 1957 to life imprisonment for a murder committed in New Jersey on April 8, 1957. On April 27, 1957, Allison surrendered himself to a police officer in Vancouver, British Columbia, saying that he was wanted in connection with a crime in New Jersey.[3]
 
 
 3
 The Canadian police obtained a statement about the crime from Allison.[4] (H.T. 1965, p. 7.) The New Jersey authorities were then informed of Allison's detention and, in order to extradite him, an indictment was promptly obtained on April 29 by the county prosecutor. Two detectives were dispatched to Vancouver to return Allison to New Jersey. Allison waived extradition. Exhibit RA-4.
 
 
 4
 Before leaving Canada, the New Jersey detectives interrogated Allison at length and secured a detailed written and signed confession on April 30.[5] On May 14, 1957, after Allison was returned to New Jersey, counsel was appointed to represent him. On May 24, 1957, Allison entered a plea of "not guilty." Shortly thereafter his counsel wrote to the county prosecutor advising that Allison wanted to retract the plea of not guilty and to plead non vult. (Exhibit RA-6.) Allison also signed the letter.
 
 
 5
 Under New Jersey law a plea of guilty to the charge of murder may not be accepted but a court may, in its discretion, accept a non vult (or nolo contendere) plea.[6] Such a plea relieves a defendant from a possible death penalty for only a jury may impose a death sentence.[7]
 
 
 6
 The county prosecutor, observing that the state's case against Allison consisted principally of his confession, recommended that the court accept the non vult plea, Exhibit RA-7, which the court subsequently did. A sentence of life imprisonment was imposed on July 9, 1957.
 
 
 7
 In October 1964, Allison applied to the Morris County Court for post conviction relief, alleging that the taking of his statement by the New Jersey detectives unconstitutionally infringed upon his right to counsel. The court denied the petition in an oral opinion of January 29, 1965, the order of dismissal being issued March 26, 1965. A later petition for a writ of habeas corpus was denied by the same court in another oral opinion announced at the hearing on December 9, 1966, apparently on the basis of the conclusion that the cases expanding the right to counsel, decided subsequent to his conviction and sentencing, could not be invoked by Allison. The New Jersey Supreme Court dismissed an appeal from this denial for lack of merit on April 18, 1967, in a brief order without opinion.
 
 
 8
 The present appeal arises out of a petition for a writ of habeas corpus filed below on June 7, 1967. In his petition Allison again asserted that his interrogation by the New Jersey police, after his indictment, violated his right to counsel, relying upon Massiah v. United States, supra, and McLeod v. Ohio, 378 U.S. 582, 84 S.Ct. 1922, 12 L.Ed.2d 1037 (1964), 381 U.S. 356 (1965).[8] The district court denied relief on May 10, 1968, in an unreported opinion, holding that a plea of guilty or non vult constitutes a waiver of the right to assert any constitutional defect in the proceedings before entry of the plea. Thus, the court did not reach the merits of the issue raised by Allison.
 
 
 9
 A case decided by the Supreme Court six months later, Smith v. Yeager, 393 U.S. 122, 89 S.Ct. 277, 21 L.Ed.2d 246 (1968), makes it clear that a defendant may not be deemed to have waived a right which was either not in existence, or was of doubtful existence, at the time of the alleged waiver. In Smith the Supreme Court reversed this court's holding, 395 F.2d 245 (1968), that a habeas petitioner had waived the right to an evidentiary hearing. The Court reasoned that the defendant in Smith should not be in a worse position with regard to the subsequently developed clear right to a hearing because he had declined in an earlier proceeding to assert the presence of the unusual circumstances then required for the grant of an evidentiary hearing. Similarly, Allison should not be foreclosed from complaining now of interrogation violating the right to counsel because he failed to raise the issue at a time when the right had not been clearly established.
 
 
 10
 Nevertheless, although Allison's non vult plea did not constitute a waiver of his right to counsel claim, we hold that the district court's denial of relief should be affirmed because Allison's conviction became final long before Massiah v. United States was decided.[9]
 
 
 11
 Before beginning the discussion of retroactivity we should point out that the fact that the interrogation of Allison by New Jersey police occurred in Canada does not preclude his assertion of constitutional rights. International law does not prevent the United States "from governing the conduct of its own citizens * * * in foreign countries when the rights of other nations or their nationals are not infringed." Skiriotes v. Florida, 313 U.S. 69, 61 S.Ct. 924, 85 L.Ed. 1193 (1941). That citizens of the United States may invoke the protection of the Constitution against actions of their government, although outside of the sovereign limits of the United States, is established by the landmark case of Reid v. Covert, 354 U.S. 1, 6-14, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957), and its progeny, Kinsella v. United States ex rel. Singleton, 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960), Grisham v. Hagan, 361 U.S. 278 (1960), and McElroy v. United States ex rel. Guagliardo, 361 U.S. 281, 80 S.Ct. 305, 4 L.Ed.2d 282 (1960). Cf. Stonehill v. United States, 405 F.2d 738, 743 (9th Cir. 1968), cert. denied, 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969). In the Supreme Court cases, legislation depriving civilian military dependants and employees living on bases abroad of their right to a jury trial was struck down. In Reid, Mr. Justice Black said,
 
 
 12
 When the [Federal] Government reaches out to punish a citizen who is abroad, the shield which the Bill of Rights and other parts of the Constitution provide to protect his life and liberty should not be stripped away just because he happens to be in another land. 354 U.S. at 6, 77 S.Ct. at 1225.
 
 
 13
 We are convinced that this principle applies with equal force to state conduct in a foreign jurisdiction involving a state prosecution. It hardly need be pointed out that a holding to the contrary might result in circumvention of the constitutional rights of criminal suspects found in foreign countries.
 
 
 14
 The guidelines controlling the retroactive application of newly announced decisions governing criminal procedure, as laid down by the Supreme Court in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and succeeding cases,[10] lead us to conclude that the rule of Massiah may not be utilized to attack convictions which have cleared the appellate courts on direct appeal before the date of the decision or where no appeal was taken.
 
 
 15
 In passing upon the issue of whether or not new standards of criminal procedure should be applied retrospectively, the Court has considered three factors:
 
 
 16
 (1) whether the purpose underlying the new rule would be served by applying it to cases previously decided;
 
 
 17
 (2) the probable effect upon the administration of justice resulting from retroactive application; and
 
 
 18
 (3) the possible reliance by police, prosecutors and the courts upon a prior state of the law.
 
 
 19
 Primary attention has been given by the Court to the purpose of a new rule.[11] If retroactive application to cases preceding enunciation of the rule would not serve to further its purpose, this factor weighs heavily against retroactivity. Conversely, if the underlying purpose of the rule would be implemented, retroactive application is indicated unless the impact of one of the other criteria is so strong as to bar such application.
 
 
 20
 The one purpose which has uniformly been considered to be fulfilled by retroactivity is preservation of the integrity or reliability of the fact-finding process. Thus, e. g., cases preserving a defendant's right to confront and cross-examine witnesses at his trial, Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), were held retroactive in Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), and Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969), respectively. This result was required because of the implications for the integrity of the trial in the intimate relationship between cross-examination and the opportunity of the fact-finder to assess a witness' credibility. Without the protection at trial afforded by these rules, persons may have been convicted in the past on evidence of questionable reliability.
 
 
 21
 More in point with respect to the present case, however, is the retroactive treatment accorded the rules developing the right to counsel at the various stages of the prosecution critical in the conduct of the defense of an accused. "[T]he right to the assistance of counsel has been applied retroactively at stages of the prosecution where denial of the right must almost invariably deny a fair trial * * *." Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967). This retroactive application of the right to counsel cases has included the right to representation by counsel at trial. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963),[12] on appeal, Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), at sentencing, Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), and at preliminary proceedings in which substantial rights of an accused may be adversely affected, White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).[13]
 
 
 22
 In explaining the connection between the right to counsel and trial fairness in Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), the Supreme Court observed that
 
 
 23
 The basic purpose of a trial [and of the related proceedings listed above] is the determination of truth, and it is self-evident that to deny a lawyer's help through the technical intricacies of a criminal trial * * * is to impede that purpose and to infect a criminal proceeding with the clear danger of convicting the innocent. 382 U.S. at 416, 86 S.Ct. at 465.[14]
 
 
 24
 Since the right to counsel is directly related to trial fairness and reliability, convictions cannot stand if obtained at trials at which the right to the assistance of counsel had not been fully observed. Application of this principle even to long-completed trials is called for because it tends to ameliorate the danger that innocent persons have been convicted.[15]
 
 
 25
 New rules which do not have the primary purpose of enhancing the reliability of the fact-finding or truth-determining process, and hence are not directly related to trial integrity, have not been applied retroactively. For instance, the exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), was held not to be fully retroactive in Linkletter v. Walker, supra.[16] The Court concluded that the prohibition of the use of tainted evidence was essential if effective protection was to be afforded from unreasonable searches and seizures. Since application of the new rules to instances in which an improper search had been consummated before Mapp v. Ohio could neither protect those whose rights had already been breached, 381 U.S. at 637, 85 S.Ct. 1731, nor greatly deter future unlawful searches, it was concluded in Linkletter that Mapp should not be applied to convictions which became final before the rule was announced.
 
 
 26
 Similarly, Tehan v. Shott, supra, denied complete retroactive application to the rule of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), prohibiting prosecutorial comment on a defendant's failure to take the stand. The purpose of the rule was to protect the exercise of the privilege against self-incrimination. Past constraint upon the freedom to exercise the privilege was not remediable as the infringement upon the right to be free of compulsion could not be repaired.
 
 
 27
 Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), denied any retroactivity to Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), cases also concerned with the privilege against self-incrimination, 384 U.S. at 729-730, 86 S.Ct. 1772. Miranda and Escobedo established rules designed to safeguard a suspect's right not to implicate himself in a crime involuntarily, by assuring the availability of counsel to an accused person under interrogation. These rules were held inapplicable to any case tried before they were announced partly, at least, because, as with Mapp and Griffin, retroactivity would not protect those whose rights had already been invaded. Although it was conceded that protection from compulsion in violation of an individual's Fifth Amendment rights would also protect against inherently unreliable coerced confessions, it was held that retroactivity was not essential to insure such protection as unreliable statements could be adequately attacked on the basis of involuntariness.[17]
 
 
 28
 The second factor identified by the Court in assessing the propriety of applying new procedural requirements retroactively is the effect such application would have on the administration of justice. This effect is manifested by the resulting necessity to hold hearings into the applicability of the new standards to old cases and to retry defendants found not to have been accorded fair treatment.[18]
 
 
 29
 The more widespread the practice or procedure now held erroneous, the greater the volume of hearings and new trials and the more significant the impact upon the administration of justice. As any truly new rule obviously will have some adverse impact upon the administration of justice in this sense, this factor has been of significance sufficient to overcome the dictates of the purpose test only when the burden would be of considerable magnitude. In two major cases this has led to a rejection of retroactivity: Stovall v. Denno, supra, and Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969).
 
 
 30
 Stovall involved the holding in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), that criminal suspects had a right to the presence of counsel at lineup identifications. As with the Miranda rule, the primary purpose for requiring the presence of counsel was to protect a suspect from being effectively deprived of his rights. Unlike Miranda, however, Wade and Gilbert had a direct and important impact upon the reliability of trials because the new rules tended to prevent procedures likely to lead to mistaken identifications — an impact which, unlike involuntary confessions, is not curable.
 
 
 31
 The Court observed in Stovall that "[a] conviction which rests on a mistaken identification is a gross miscarriage of justice. The Wade and Gilbert rules are aimed at minimizing that possibility by preventing the unfairness at the pretrial confrontation that experience has proved can occur and assuring meaningful examination of the identification witness' testimony at trial." 388 U.S. at 297, 87 S.Ct. at 1970. Despite this purpose, Wade and Gilbert were not applied retroactively because of the "unusual force of the countervailing considerations," 388 U.S. at 299, 87 S.Ct. at 1971, engendered by the fact that many convictions were no doubt based on lineup identifications now deemed constitutionally deficient.
 
 
 32
 Halliday denied retrocative application to McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), a case developing the standards required for the acceptance of guilty pleas in federal criminal prosecutions by Rule 11 of the Federal Rules of Criminal Procedure. Rule 11 is intended to make certain that a defendant's plea is voluntarily and understandingly made and that it is factually supported. The Court held in Halliday that, although the new requirements enhanced the reliability of the determination of guilt, "the general application of Rule 11 in a manner inconsistent with" the requirements of McCarthy indicated that the decision should not have retroactive effect because of the consequent burden on the federal judiciary of rehearing cases which were not faithful to Rule 11. 394 U.S. at 833, 89 S.Ct. 1498.[19]
 
 
 33
 The third factor discussed by the Court is reliance by police, prosecutors and the courts upon an assumed state of the law, justified by earlier court decisions or widespread practice. Reliance has been the least important of the three factors and has been only vaguely defined. Although the Supreme Court has bowed in the direction of the reliance factor in most of the cases denying retroactivity to new rules of criminal procedure, e. g., Johnson v. New Jersey, supra, 384 U.S. at 732-733, 86 S.Ct. 1772, the only case in which reliance seems to have had a significant bearing on the result is DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968). There the Court concluded that Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), should not be retroactive.
 
 
 34
 Duncan's guarantee of jury trials for serious crimes was deemed unrelated to trial reliability and thus nonretroactivity was clearly indicated. However, Bloom's requirement of jury trials for serious criminal contempts was held to be designed to insure trial fairness by abolishing the practice of having a judge offended by allegedly contemptuous behavior try the contempt action. Nevertheless, since the "tradition of nonjury trials for contempts was * * * firmly established," 392 U.S. at 635, 88 S.Ct. at 2096, reliance on previous standards was justified, and the rule was limited to prospective application.
 
 
 35
 The comparative unimportance of the reliance factor suggests that standing alone it is insufficient to justify the decision (inherent in holding new principles of criminal procedure nonretroactive) not to inquire as to whether defendants were unfairly convicted in the past. Where suspicion of such injustice exists, it would seem that reliance upon prior law in the course of a prosecution could ordinarily rise to sufficient importance to justify nonretroactivity only insofar as its presence had noteworthy consequences, such as are taken into account in consideration of the probable effect upon the administration of justice resulting from retroactivity.[20]
 
 
 36
 In summary, the cases show that generally a new rule should be retroactive if it strongly supports the fact-finding process, although important countervailing considerations may be decisive even in the case of rules closely identified with trial reliability.
 
 
 37
 Turning now to the retroactivity of Massiah, none of the appellate courts which have considered the question has been convinced that the purpose of the Massiah rule is such as to require complete retroactivity.
 
 
 38
 Massiah has been given limited retroactive application by some courts. As indicated, the Supreme Court in McLeod v. Ohio, supra, has applied Massiah to appeals pending as of the date of the Massiah decision. However, the Court's per curiam McLeod opinions were issued before Linkletter explored the retroactivity issue in depth.[21] Several courts, including our own, which were not faced with the issue of complete retroactivity, have applied Massiah in similar fashion. United States ex rel. O'Connor v. New Jersey, 405 F.2d 632 (3d Cir.), cert. denied, 395 U.S. 923, 89 S.Ct. 1770, 23 L.Ed.2d 240 (1969); Hancock v. White, 378 F.2d 479 (1st Cir. 1967); State v. Cowans, 10 Ohio St.2d 96, 227 N.E.2d 201 (1967); Commonwealth v. McCarthy, 348 Mass. 7, 200 N.E.2d 264 (1964).
 
 
 39
 While the California Supreme Court has ruled that Massiah applies to convictions not final as of the date of the Supreme Court decision, In re Spencer, 63 Cal.2d 400, 46 Cal.Rptr. 753, 406 P.2d 33 (1965), it has expressly held that the decision should have no greater retroactive effect, In re Lopez, 62 Cal.2d 368, 42 Cal. Rptr. 188, 398 P.2d 380 (1965), cert. denied, 384 U.S. 1016, 86 S.Ct. 1929, 16 L. Ed.2d 1038 (1966). The Second Circuit Court of Appeals has likewise decided against complete retroactivity, United States ex rel. Romano v. Fay, 360 F.2d 389 (1966), but unlike California, has not concurred in the McLeod approach; see dictum in United States ex rel. Molinas v. Mancusi, 370 F.2d 601 (2d Cir. 1967). Both courts viewed Massiah as designed to prevent the police from securing confessions in violation of a defendant's rights and concluded that its purpose would not be furthered by retroactivity. See also Elliot v. Warden, 243 Md. 627, 222 A.2d 55 (1966), where the Maryland Court of Appeals held Massiah nonretroactive, at least as to final convictions.
 
 
 40
 The Fifth Circuit has used language indicating that it would deny any retroactive effect to Massiah, Lyles v. Beto, 363 F.2d 503 (5th Cir. 1966), although seemingly the conviction there was final before Massiah was decided. In Commonwealth v. Coyle, 427 Pa. 72, 233 A.2d 542 (1967), vacated on other grounds sub nom., Lopinson v. Pennsylvania, 392 U.S. 647, 88 S.Ct. 2277, 20 L.Ed.2d 1344 (1968), the Pennsylvania Supreme Court apparently held that Massiah did not have any retroactive effect whatsoever. In Elliot, Lyles and Coyle the courts reasoned that the purpose of Massiah was so similar to those of Escobedo, Miranda, Wade and Gilbert that retroactivity should be likewise denied.
 
 
 41
 In deciding whether or not Massiah should be retroactive, consideration must be given first to its purpose. In Massiah, the defendant was under federal indictment for a narcotics offense and free on bail. Through the cooperation of a co-defendant, a government agent surreptitiously overheard a conversation in which the defendant was led into making damaging admissions to his supposed comrade. The agent testified at trial to having heard these admissions. The Court, in reversing the convictions, relied heavily upon Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The landmark Powell case held that the acknowledged right to counsel was not afforded merely by the presence of a lawyer at the trial because the right to effective assistance of counsel comprehends an opportunity to prepare a defense. In the words of Justice Sutherland, the right to have counsel was not fulfilled "by an assignment [of counsel] at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case. * * *" 287 U.S. at 71, 53 S.Ct. at 65.
 
 
 42
 Massiah held that a defendant's right to counsel becomes effective upon indictment, that police efforts to secure a statement from an indicted defendant in the absence of counsel constitute an infringement of that right, at least where no waiver is found, and that any statement so obtained is inadmissible.
 
 
 43
 Massiah has been treated by most courts as an example of the type of rule which uses the right to counsel as a vehicle to protect against abuse of some other important rights afforded defendants in our system of criminal justice. It has been equated with Miranda, Escobedo, Wade and Gilbert.
 
 
 44
 Differences do exist, however, between Massiah and the cases dealing with pre-indictment proceedings. After an indictment has been returned, the dominating concern becomes the impending trial. It is crucial to a defendant that he prepare his defense, which he can probably do well only with the aid of counsel. During the pre-indictment stage, the dominant factor is the desire of the police to solve the crime. Although the impact on individual rights due to the necessity to solve crimes may be present after indictment as well as before, we may suppose it will be less pronounced in the later stage, especially in the case of a defendant on bail who is away from the coercive atmosphere of the station house. More importantly, however, prior to indictment a suspect's need for a lawyer is limited to those critical stages where his rights may be abused since indictment and prosecution may not actually follow; once the suspect has been indicted, he has the additional concern of preparing a defense. Therefore, the rationale for the rules developing the right to counsel at the pre-indictment and post-indictment stages may well be different.[22]
 
 
 45
 Thus, it could be argued that Massiah is an expansion of the right to counsel established in Powell and extended in Gideon, i. e., that this right includes the opportunity to prepare a defense in advance of trial, and that the right of preparation commences with the indictment when it becomes certain that prosecution will follow. Under this line of reasoning, retroactive application of Massiah may be deemed appropriate because its purpose would be to prevent interference with the right to prepare and present a defense and, like Gideon, would enhance trial reliability.
 
 
 46
 We do not believe, however, that this reasoning can sustain its own weight. For Massiah to be considered as a rule preventing interference with counsel it should appear in what way the interference takes place. We do not believe that interrogation per se constitutes actual, tangible interference with the right to have counsel available for the preparation of a defense because normally there would still be sufficient opportunity to do so despite occasional questioning after indictment.[23]
 
 
 47
 Massiah's holding that post-indictment interrogation violates a defendant's right to counsel is designed either to protect the effectiveness of the right to counsel as such or to curb interrogation without counsel. Although Massiah appears to be concerned at least to some extent with the former, in substance it affords limited protection to this right. The real concern of Massiah, therefore, must be with interrogation, much like Miranda. This being so, it seems clear that Massiah should not apply retroactively as an abuse of a party's rights during his interrogation, once perpetrated, cannot be swept away and retroactivity would not further the main purpose Massiah was designed to serve.[24] Any effect Massiah may have in improving the truth-determining process through the prevention of coercive statements, as with Miranda, simply duplicates the function of the rules requiring that only voluntary confessions be admitted into evidence. Thus the trial reliability aspect of Massiah is not of primary significance.
 
 
 48
 This conclusion is reinforced by reference to appellant Allison's case. Examination of the record discloses no reason to doubt the reliability of his statement or confession, which he freely admits was given voluntarily. His complaint is now that it would have been "better" had he had counsel at the time of his interrogation.[25] We may agree with appellant that if he had had the benefit of counsel, he may have fared better. However, the mere fact that there may have been a different outcome in his prosecution is not decisive when there is no reason to believe that such a different outcome would more accurately reflect the truth.
 
 
 49
 The record shows further than once Allison was represented by counsel there was full opportunity for consultation. Application of the Massiah rule retroactively to appellant would not redress any deprivation of the right to assistance of counsel for trial required by Powell and Gideon, as there was no such deprivation here. Cf. United States v. Hendrickson and United States ex rel. Hundley v. Pinto, supra note 23.
 
 
 50
 The conclusion that Massiah's purpose would not be served by applying it retroactively makes inquiry into the administration of justice and reliance factors largely superfluous. It should be noted, however, that, as with the Miranda rule, the assumption by law enforcement authorities that interrogation without counsel was permissible could be justifiably relied upon because prior to Massiah no statements had ever been held inadmissible per se solely because of the absence of counsel during interrogation, either before or after indictment.[26]
 
 
 51
 Furthermore, although it is probable that most police investigations are concluded before indictment and consequently fewer interrogations are conducted thereafter, the effect upon the administration of justice of applying Massiah retroactively may be sufficiently great to be of some concern. Therefore, the reliance and administration of justice factors also support the determination that Massiah should not be given full retroactivity.
 
 
 52
 Because the guidelines on retroactivity developed by the Supreme Court have not proved to be infallible,[27] and because Massiah partakes of some of the features and rationale of Escobedo and Miranda, on the one hand and Gideon and White on the other, we abjure the infallibility of the result we have reached here. If there is a trend discernible in the decisions of the Supreme Court, however, it is to restrict rather than to expand retroactive application of newly proclaimed constitutional rules of criminal procedure.[28]
 
 
 53
 Having disposed of the Massiah issue, we should note also that the facts of appellant's case may possibly support relief on another ground not raised below. As discussed earlier, appellant pled non vult to the indictment rather than contest his guilt. The New Jersey statutory scheme requires that all first degree murder defendants be tried by a jury, which is required to impose the death sentence upon those found guilty unless it believes mercy is appropriate. The exception to the rule is the plea of non vult. See note 7, supra. In so pleading, Allison took the only route available to relieve him of the possibility of the death penalty.
 
 
 54
 The recent decision of the Supreme Court in United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), raises the question as to whether New Jersey's statutory scheme may be constitutionally defective if it chills the exercise of the right to a jury trial and the privilege against self-incrimination. In Jackson the Court held that the provision of the Federal Kidnapping Act that the death penalty may be imposed only after a jury trial could not stand because it discouraged the assertion of the right to trial by jury. Under the federal statute an accused could elect to be tried by a judge without a jury or plead guilty, and in either case life imprisonment would be the maximum penalty. The fact that this feature of the Kidnapping Act was intended to mitigate the harshness of the death penalty was held insufficient to save the statute because the same goal could be achieved without chilling the constitutional right to a jury trial.
 
 
 55
 The New Jersey Supreme Court has expressed the view that Jackson did not invalidate the New Jersey law insulating defendants pleading non vult from the death penalty. State v. Forcella, 52 N.J. 263, 245 A.2d 181 (1968), petition for cert. filed. The New Jersey court concluded that procedures which may discourage a defendant from asserting the right to a trial generally, i. e., the right to defend himself at all rather than plead non vult, are distinguishable from procedures chilling the right to be tried by a jury rather than by a judge. The court held that the New Jersey statute — falling into the first category — does not have the defect present in the Federal Kidnapping Act.[29] As appellant has refrained from raising this issue in the present appeal, we do not indicate any opinion on its proper resolution, especially since the effect of Jackson on the validity of New Jersey's statute is presently before the United States Supreme Court.[30]
 
 
 56
 For the reasons given, the district court's denial of appellant's petition for habeas corpus will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 McLeod v. Ohio, 378 U.S. 582, 84 S.Ct. 1922, 12 L.Ed.2d 1037 (1964); McLeod v. Ohio, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965)
 It should be made clear at the outset that the issue of retroactivity does not involve any constitutional considerations as the Constitution is silent on the retrospective effect of court decisions. Linkletter v. Walker, 381 U.S. 618, 629, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). The Supreme Court has said that the "choice between retroactivity and nonretroactivity in no way turns on the value of the constitutional guarantee involved." Johnson v. New Jersey, 384 U.S. 719, 728, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).
 
 
 [2]
 Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)
 
 
 [3]
 Appellant's statement to New Jersey police. Exhibit RA-3, p. 8
 
 
 [4]
 The Canadian statement is not in the record
 Appellant does not recall whether the Canadian police advised him of the right to consult counsel or the right to remain silent. Transcript of 1965 hearing (H.T. 1965, p. 9). He contends he was in an intoxicated state when he gave the statement. (Habeas Corpus Petition, p. 4.) Since the Canadian statement has played no significant part in this case, we do not reach the question of the applicability of federal constitutional guarantees to the conduct of foreign police personnel abroad. See Stonehill v. United States, 405 F.2d 738 (9th Cir. 1968), cert. denied, 395 U.S. 960, 89 S.Ct. 2102, 23 L. Ed.2d 747 (1969).
 
 
 [5]
 The transcript of Allison's confession (Exhibit RA-3, p. 1) contains a warning concerning his right to remain silent and to secure the advice of counsel. Allison testified at a state post conviction relief hearing in 1965 that he could not remember whether the warning was actually read to him. (H.T.1965, pp. 19, 28.) In his habeas corpus petition, p. 5, he asserts that "he was never asked if he wanted counsel — nor was he ever told he was entitled to court assigned counsel."
 
 
 [6]
 This plea has been described by the New Jersey Supreme Court as "tantamount to a plea of guilt." State v. Forcella, 52 N.J. 263, 270, 245 A.2d 181, 185 (1968), petition for cert. filed
 
 
 [7]
 The relevant statutory provisions are as follows:
 In no case shall the plea of guilty be received upon any indictment for murder, and if, upon arraignment, such plea is offered, it shall be disregarded, and the plea of not guilty entered, and a jury, duly impaneled, shall try the case.
 Nothing herein contained shall prevent the accused from pleading non vult or nolo contendere to the indictment; the sentence to be imposed, if such plea be accepted, shall be either imprisonment for life or the same as that imposed upon a conviction of murder in the second degree. N.J.S.A. 2A:113-3.
 Every person convicted of murder in the first degree, his aiders, abettors, counselors and procurers, shall suffer death unless the jury shall by its verdict * * * recommend life imprisonment, in which case this and no greater punishment shall be imposed.
 * * * N.J.S.A. 2A:113-4.
 There is no right to a trial by a judge without a jury. The only options are a trial by jury or a plea of non vult.
 
 
 [8]
 InMassiah, discussed in more detail, infra, a statement elicited by a federal agent after the defendant's indictment in a federal prosecution was held inadmissible as an infringement of the right to counsel. Reliance on that case in McLeod, supra, made it clear that Massiah applies to all post indictment efforts to obtain a statement from a defendant. See United States ex rel. O'Connor v. New Jeresy, 405 F.2d 632, 635-636 (3d Cir.), cert. denied, 395 U.S. 923, 89 S.Ct. 1770, 23 L.Ed.2d 240 (1969).
 
 
 [9]
 In view of the disposition we make of this appeal, we do not reach appellee's contention that even if Allison's statement was legally inadmissible it was not a factor inducing his guilty plea and thus may not be used to challenge his conviction. Because of the basis on which the district court disposed of this petition, no evidentiary hearing was held and no determination concerning inducement was madeSee generally Commonwealth of Pa. ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956); United States ex rel. Ross v. McMann, 409 F.2d 1016 (2d Cir.), judgment vacated as moot 396 U.S. 118, 90 S.Ct. 395, 24 L.Ed.2d 303, (1969); United States ex rel. Collins v. Maroney, 382 F.2d 547 (3d Cir. 1967), on remand, 287 F.Supp. 420 (E.D.Pa.1968); Busby v. Holman, 356 F. 2d 75 (5th Cir. 1966); Palumbo v. New Jersey, 334 F.2d 524 (3d Cir. 1964); United States ex rel. Brown v. LaVallee, 301 F.Supp. 1245 (S.D.N.Y.1969); United States ex rel. Crowson v. Brierley, 300 F.Supp. 1175, 1178 (E.D.Pa.1968), aff'd per curiam, 411 F.2d 910 (3d Cir. 1969).
 While we might have remanded the case to try to determine the question of inducement before reaching the issue of retroactivity, we prefer to avoid placing on the lower court the burden of resolving the nebulous problem of inducement, more than a decade after the event, when the matter of retroactivity is not unduly difficult.
 
 
 [10]
 See also Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 2d 882 (1966); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). For a comprehensive discussion of the general principles of retroactivity see 1B Moore's Federal Practice ¶¶ 0.402 [3.-2-3]-0.402 [3.-2-5] (2d ed. 1965); Rogers, Perspectives on Prospective Overruling, 36 Kan.City L.Rev. 35 (1968); Schwartz, Retroactivity, Reliability, and Due Process: A Reply to Professor Mishkin, 33 U. of Chi.L.Rev. 719 (1966); Mishkin, Foreword: The High Court, The Great Writ, and the Due Process of Time and Law, 79 Harv. L.Rev. 56 (1965).
 
 
 [11]
 See Desist v. United States, supra, 394 U.S. at 249, 89 S.Ct. 1030.
 
 
 [12]
 Gideon was applied retroactively in this Circuit in Palumbo v. New Jersey, 334 F.2d 524 (3d Cir. 1964); United States ex rel. Craig v. Myers, 220 F.Supp. 762 (E.D.Pa.1963), aff'd, 329 F.2d 856 (3d Cir. 1964).
 
 
 [13]
 The cases applying the right to counsel requirement at these various stages of criminal proceedings retroactively are Doughty v. Maxwell, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650 (1964), with respect toGideon; Smith v. Crouse, 378 U.S. 584, 84 S.Ct. 1929, 12 L.Ed.2d 1039 (1964), with respect to Douglas; McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968), with respect to Mempa and Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968), with respect to White.
 
 
 [14]
 Discussing this danger in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the Court said:
 Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. 287 U.S. at 69, 53 S.Ct. at 64.
 
 
 [15]
 It should also be noted that Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), have been applied retroactively, without extended discussion, in per curiam opinions. McNerlin v. Denno, 378 U.S. 575, 84 S.Ct. 1933, 12 L.Ed. 2d 1041 (1964), and Eskridge v. Washington State Board of Prison Terms and Paroles, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958). In Stovall v. Denno,supra, the Court said that the reason for the retrospective application of Jackson v. Denno is to "correct serious flaws in the fact-finding process at trial." 388 U.S. at 298, 87 S.Ct. at 1970.
 While the Jackson and Griffin cases did not deal with the right to counsel at a particular stage of a judicial proceeding, they may be considered to be directly related to the fairness and reliability of the truth finding process. Jackson dealt with the admissibility of possibly unreliable coerced confessions; Griffin protected the right of an indigent to an effective appeal.
 In addition, the Court has indicated that Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), should be applied retroactively. Id. at 523 n. 22, 88 S.Ct. 1770; Witherspoon held that a state's exclusion from the jury of all veniremen who expressed hesitancy about imposing capital punishment, where the jury was charged with deciding punishment in a capital case, violated the impartiality requirement of the Sixth and Fourteenth Amendments. The Court concluded that Witherspoon should be fully retroactive because of its effect on the integrity of the sentencing process.
 
 
 [16]
 We followedLinkletter in Commonwealth ex rel. Craig v. Maroney, 348 F.2d 22, 32 (3d Cir. 1965); United States ex rel. Campbell v. Rundle, 327 F.2d 153, 163 (3d Cir. 1964).
 Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), which limits constitutionally permissible searches incident to arrest, also has been held to apply prospectively only. United States v. Bennett, 409 F.2d 888 (2d Cir. 1969); People ex rel. Muhammad v. Mancusi, 301 F.Supp. 1100 (S.D.N.Y. 1969); but see Fresneda v. State, 458 P. 2d 134 (Alaska 1969), giving Chimel limited retroactive effect to cases on appeal at the time of the decision, and Colosimo v. Perini, 415 F.2d 804 (6th Cir. 1969), apparently applying the "foreshadowing" principle. See note 20, infra. Lyon v. United States, 416 F.2d 91 (5th Cir. 1969), and Scott v. State, 7 Md.App. 505, 256 A.2d 384 (1969), have also held Chimel not to be fully retroactive. The Supreme Court has expressly refrained from ruling on Chimel's retroactivity up to this time. Van Cleef v. New Jersey, 395 U.S. 814, 89 S.Ct. 2051, 23 L.Ed.2d 728 (1969); Shipley v. California, 395 U.S. 818, 89 S.Ct. 2053, 23 L.Ed.2d 732 (1969).
 Speaking of Mapp Professor Freund said:
 * * * Since the new evidentiary rule goes not to the intrinsic fairness of the trial but to an effective sanction for the enforcement of rules of police conduct, and since that sanction will operate prospectively, the compulsion to apply the exclusionary policy retrospectively is relatively weak; * * *. Freund, New Vistas in Constitutional Law, 112 U. of Pa.L.Rev. 631, 637 (1964).
 
 
 [17]
 As Mr. Chief Justice Warren said inJohnson:
 * * * [T]he question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree. * * * We are thus concerned with a question of probabilities and must take account, among other factors, of the extent to which other safeguards are available to protect the integrity of the truth-determining process at trial.
 * * * * *
 * * * Future defendants will benefit fully from our new standards governing in-custody interrogation, while past defendants may still avail themselves of the voluntariness test. * * * 384 U.S. at 729, 732, 86 S.Ct. at 1778, 1779.
 Other cases in which the purpose test has weighed against retroactivity include Desist v. United States, supra, which restricted to prospective application the rule of Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), that nontrespassory wiretapping must be conducted in accordance with the Fourth Amendment; Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968), which held that Lee v. Florida, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1968), extending to state criminal trials the prohibition against the use of evidence obtained in violation of the Federal Communications Act would be prospective only; and DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968), which denied retroactivity to the right to a jury trial in serious criminal cases. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).
 Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), and In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), if construed to require that counsel be furnished to indigent juveniles at a waiver of jurisdiction hearing, were held nonretroactive in Kemplen v. Maryland, 295 F.Supp. 8 (D.Md.1969), because such a hearing partakes "more of a finding of probable cause to initiate further action" than an adjudication of guilt. See also Mordecai v. United States, (D.C.Cir. 1969); Schornhorst, The Waiver of Juvenile Court Jurisdiction: Kent Revisited, 43 Ind.L. Rev. 583, 610 (1968).
 
 
 [18]
 In considering the weight of this factor in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), discussedinfra, the Court observed that:
 At the very least, the processing of current criminal calendars would be disrupted while hearings were conducted to determine taint, if any, in identification evidence, and whether in any event the admission of the evidence was harmless error. 388 U.S. at 300, 87 S.Ct. at 1971.
 
 
 [19]
 The possibility of an adverse effect upon the administration of justice was also referred to, but not exclusively relied upon, in denying retroactivity in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968); and Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969)
 
 
 [20]
 A decision announcing a rule clearly foreshadowed in previous cases should not be denied retroactivity where reliance on a contrary rule is not justifiedSee, Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969); United States ex rel. Pugach v. Mancusi, 411 F.2d 177 (2d Cir.) cert. denied, 396 U.S. ___, 90 S.Ct. 172, 24 L.Ed.2d 163 (1969). However, Desist v. United States, 394 U.S. at 248, 89 S.Ct. 1030, 22 L.Ed.2d 248; Johnson v. New Jersey, 384 U.S. at 734, 86 S.Ct. 1772, and Linkletter v. Walker, 381 U.S. at 629-636, 85 S.Ct. 1731, 14 L. Ed.2d 601, which denied retroactivity to decisions overruling cases already substantially undermined, make it clear that the burden of asserting that a decision has been foreshadowed and hence raises no retroactivity issue is heavy, at least where an uncontradicted, if discredited, Supreme Court opinion exists.
 
 
 [21]
 No great significance should be attached to this limited application ofMassiah to cases preceding its decision in considering whether or not it should have full retroactivity. The rules of Mapp v. Ohio, supra, and Griffin v. California, supra, had been similarly applied to cases on direct appeal but, as previously noted, they were denied full retroactivity upon ultimate consideration of the issue. See Johnson v. New Jersey, 384 U.S. at 732, 86 S.Ct. 1772.
 In Desist v. United States, supra, the Supreme Court pointed out that in Johnson "we abandoned the approach taken in Linkletter and Tehan, and concluded that `there are no jurisprudential or constitutional obstacles' to the adoption of a different cut-off point." 394 U.S. at 252, 89 S.Ct. at 1035. However, the Court has not indicated that the limited retroactivity accorded Mapp and Griffin in Linkletter and Tehan is wrong. Therefore, we must leave the limited retroactivity of Massiah in its present status under the Supreme Court McLeod opinions and our O'Connor decision.
 
 
 [22]
 It was on this ground that the author of theMassiah opinion, Mr. Justice Stewart, dissented in Escobedo. The majority in Escobedo drew heavily on Massiah, which Justice Stewart felt was not in point because,
 [T]he vital fact remains that this case does not involve the deliberate interrogation of a defendant after the initiation of judicial proceedings against him. * * *
 * * * Under our system of criminal justice the institution of formal, meaningful judicial proceedings, by way of indictment, information, or arraignment, marks the point at which a criminal investigation has ended and adversary proceedings have commenced. It is at this point that the constitutional guarantees attach which pertain to a criminal trial. * * * Escobedo v. Illinois, 378 U.S. at 493-494, 84 S.Ct. at 1766.
 
 
 [23]
 Cf. United States v. Hendrickson, 417 F.2d 225 (3d Cir. 1969), where we held that failure to assign counsel at the time of arraignment in a federal criminal proceeding did not violate the Fifth or Sixth Amendments, and United States ex rel. Hundley v. Pinto, 413 F.2d 727, 728 (3d Cir. 1969), where we held similarly with respect to the assignment of counsel at a state arraignment in New Jersey.
 Post-indictment interrogations so time-consuming as to actually amount to a denial of access to counsel would no doubt be subject to attack under Powell and Gideon as a deprivation of due process independently of the Massiah rule.
 
 
 [24]
 The similarity of the purpose ofMassiah to the rule in Escobedo was emphasized in the opinion in the latter case. 378 U.S. at 484-486, 84 S.Ct. 1758.
 In Tehan v. United States ex rel. Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed.2d 453 (1966), the Court said:
 * * * [T]he Fifth Amendment's privilege against self-incrimination is not an adjunct to the ascertainment of truth. That privilege, like the guarantees of the Fourth Amendment, stands as a protection of quite different constitutional values — values reflecting the concern of our society for each individual to be let alone. To recognize this is no more than to accord those values undiluted respect.
 The similarity of Massiah to Escobedo and Miranda can also be seen from Pryor v. Henderson, 403 F.2d 46, 48 (6th Cir. 1968):
 The fact that counsel was not appointed for Pryor at the arraignment is not a per se violation of the Sixth Amendment. * * * However, Massiah makes it clear that the constitutional guarantee of counsel forbids the use of any incriminating statement deliberately obtained for the purpose of prosecution from a defendant who has not been advised of his right to remain silent and to the assistance of counsel, and has not clearly waived that right.
 Another type of self-incrimination case, Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), which held the registration provisions of the marijuana laws to be invalid, was determined not to be fully retroactive but was given limited retrospective operation in United States v. Scardino, 414 F.2d 925 (5th Cir. 1969). See also Barrett v. United States, 300 F.Supp. 1060 (D. Minn.1969). On the nonretroactivity of Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), dealing with the infringement of a defendant's privilege against self-incrimination under the National Firearms Act, see Horton v. United States, 300 F.Supp. 1332 (D.Conn.1969), and Stoney v. United States, 302 F.Supp. 145 (E.D.Mo. 1968). Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), dealing with compelled self-incrimination under federal wagering statutes, was held not to be fully retroactive in Graham v. United States, 407 F.2d 1313 (6th Cir. 1969). Contra, United States v. Lucia, 416 F.2d 920 (5th Cir. 1969).
 
 
 [25]
 At his state post conviction relief hearing, Allison said:
 * * * I recall no coercion and no threats * * * [B]ut you are quite alone. * * * [W]hat I am trying to say is that I think it would have been better for me if I had some legal help at that time. * * *
 * * * * *
 * * * I do wish that I had at that time legal advice, a lawyer, who could say to me: Do you understand exactly what you are doing here? Do you fully understand this? Do you understand what this could do to you, how involved this could get, how this could change your entire life? But like I said, I didn't have any advice. (H.T.1965, pp. 22-24.)
 
 
 [26]
 See Johnson v. New Jersey, 384 U.S. at 731, 86 S.Ct. 1772, 16 L.Ed.2d 882.
 
 
 [27]
 See the dissents in Desist v. United States, supra, by Justice Harlan and Justice Fortas, 394 U.S. at 256, 269, 89 S.Ct. 1030.
 
 
 [28]
 See 1B Moore's Federal Practice ¶ 0.402 [3.-2-5] n. 1, n. 36 (2d ed. Supp. 1968)
 
 
 [29]
 The Fourth Circuit in Alford v. North Carolina, 405 F.2d 340 (1968), prob. juris. noted, 394 U.S. 956, 89 S.Ct. 1306, 22 L.Ed.2d 558 (1969), and the Supreme Court of South Carolina in State v. Harper, 251 S.C. 379, 162 S.E.2d 712 (1968), have disagreed with the New Jersey court in assessing the impact ofJackson on similar statutory schemes. In the latter case the court said that provisions which "render the death penalty for murder in South Carolina applicable only to those defendants who assert the right to plead not guilty" were invalidated by Jackson. 251 S.C. at 382, 162 S.E.2d at 713, but see Breland v. State, S.C., 169 S.E.2d 604 (1969), which took a somewhat different view of the South Carolina statute where a guilty plea was involved. See also Spillers v. State, 436 P.2d 18 (Nev.1968), but see State v. Peele, 274 N.C. 106, 161 S.E.2d 568 (1968), cert. denied 393 U.S. 1042, 89 S.Ct. 669, 21 L.Ed.2d 590 (1969). For a discussion of the relationship between Jackson and Forcella, see, Note, United States v. Jackson: Guilty Pleas and Replacement Capital Punishment Provisions, 54 Cornell L.Rev. 448 (1969); Comment, 44 N.Y.U.L.Rev. 612 (1969).
 
 
 [30]
 Whatever the proper view of the impact ofJackson upon the New Jersey statute, it is clear that appellant may invoke the 1968 Jackson decision, as in the case of Massiah, only if it is applied retroactively. We express no opinion on this question.
 There is a split in authority on the question of Jackson's retroactivity in the cases reaching the issue. United States ex rel. Buttcher v. Yeager, 288 F.Supp. 906 (D.N.J.1968), without deciding Jackson's applicability to the New Jersey non vult plea statute involved here, held Jackson to be nonretroactive in any event. See also Lone v. United States, 299 F. Supp. 855 (N.D.Cal.1969), and Pindell v. United States, 296 F.Supp. 751 (D. Conn.1969). On the other hand, in Shaw v. United States, 299 F.Supp. 824 (S.D.Ga.1969), and Natale v. United States, 287 F.Supp. 96 (D.Ariz.1968), as well as in Alford v. North Carolina, supra,Jackson was applied retroactively. In Alford, the court did not expressly discuss the retroactivity issue.