UNITED STATES

v.

David J. TUCKER.

Civ. A. No. 2516–68.

Crim. No. 1048–57.

United States District Court, District of Columbia.

July 13, 1971.

Marie S. Klooz and A. J. D. Schmidt, Washington, D. C., for plaintiff.

Thomas K. Moore, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., District Judge.

The defendant, David J. Tucker, is before the Court on a motion to vacate sentence pursuant to 28 U.S.C. § 2255 (1964). He had been convicted of first degree murder and related offenses in 1962 and sentenced to life imprisonment.

This present 2255 motion is before the Court on remand from the United States Court of Appeals for the District of Columbia Circuit, Tucker v. United States, 138 U.S.App.D.C. 345, 427 F.2d 615 (1970), which held that Tucker's motion raised issues that entitled him to a hearing, reversing this Court's initial ruling that denied the motion without a hearing. After consideration of the memoranda in support of and in opposition to Tucker's motion as well as the testimony of the witnesses and the argument of counsel presented at the hearing on this motion, it is the conclusion of this Court that the motion should be denied.

The first issue of any substance raised by this motion is that Tucker was denied adequate representation of counsel. A close examination of the allegations of inadequate representation reveals that Tucker's complaint is that his very capable attorneys, in exercising their professional judgment, chose a legitimate tactical defense—insanity. Defense counsels' efforts were not directed to the issues of fact but rather to the issues of insanity. The mere fact that the professionally chosen defense was unsuccessful does not constitute the gross incompetence necessary to sustain an allegation of inadequate representation.[1] Further, in this 2255 motion Tucker contends he was inadequately represented because his defense counsel did not attack the admissibility of his in-custody statements. One cannot sustain such allegations, however, on the fact that, in the exercise of their professional judgment, defense counsel did not attack the admissibility of certain statements that would play only a marginal role as to the issue of insanity. Moreover, the defense cannot be criticized for failing to raise arguments in the heat of a trial which arguments this

1. *See* Scott v. United States, 138 U.S.App. D.C. 339, 427 F.2d 609, 610 (1970) where the appropriate standard for ineffective assistance of counsel in a collateral attack was set forth as "whether gross incompetence blotted out the essence of a substantial defense." This is the standard set forth in the case of Bruce v. United States, 126 U.S.App.D.C. 336, 379 F.2d 113–116–117 (1967) where the Court went on to say in Footnote 5 that it would not reassess or review by hindsight the judgment of defense counsel on questions of strategy, trial tactics or trial decisions.

Court, after a complete hearing and consideration of extensive legal memoranda, finds to be without merit.

The remaining issues of any substance raised in the present motion revolve around the admissibility of those in-custody statements. On November 4, 1957, Tucker was indicted for murder and on November 8, 1957 a bench warrant was issued for his arrest. He remained a fugitive until his arrest in the New York City area by FBI agents on June 4, 1959. They arrested him at 2:00 p. m. at Rockaway Beach and arrived with him back at the FBI office in Manhattan by 3:10 p. m. The agents fed Tucker and then advised him that he had a right to counsel, a right to remain silent and that anything he may say could be used against him. They then told him why he was arrested and asked him if he wanted to talk about it in order to make certain that they had the right man. At that point, Tucker told the agents that he had shot at one woman and accidentally hit another, the victim. This all took place after he had eaten, between 3:35 and 4:05 p. m.

Tucker then indicated that he had an upset stomach and the agents had a nurse check him. This took approximately twenty-five minutes. Then, from 4:30 to 4:50 p. m., they processed him including fingerprinting and taking his photograph. It was then too late to present him to a commissioner; and he was therefore detained overnight in a federal jail and presented the next morning.

■■ In his present motion, Tucker contends that that statement given to the FBI agents was inadmissible at his trial because it was taken while he was being unlawfully detained. This Court is satisfied that his arrest was lawful in that he was a known fugitive for whom there was an outstanding arrest warrant to answer a murder indictment. Further, it is clear that the delay in presenting him to a commissioner was not so unnecessary as to violate the rule of Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479

(1957). The statement in question was given within two hours after his arrest, and even though his presentment was delayed for almost twenty hours, it was a necessary delay during which there was no extensive interrogation. Rather, he was transported from the scene of the arrest, fed, advised of his rights, questioned briefly, examined by the nurse, processed and locked up to ensure his presence for arraignment the next morning. The statement given to the FBI agents was not given during a period of unlawful detention.

The defendant contests the admissibility of that statement as well as a statement given to a Metropolitan Police Homicide Detective June 23, 1959 while Tucker was being held in the cell block at the United States District Court House in Washington, D. C., on two additional grounds. Those additional grounds are first, that the statements were elicited unlawfully in violation of the rule of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and second, that the statements were involuntary because he lacked the mental capacity to make a voluntary statement.

■ As to the *Massiah* claim, it is clear that Tucker's statements had been elicited from him after he was indicted but in the absence of counsel. As of this date, however, the *Massiah* rule excluding such statements, has not been applied retroactively to cases such as Tucker's that had completed the appeal process before the date of the *Massiah* decision. Tucker urges that *Massiah* should be applied retroactively to his case even though the statements were made long before the *Massiah* decision and even though his appeal was finalized before *Massiah*, because, he contends, the purpose of *Massiah* was to protect a fundamental right the denial of which would preclude a fair trial.

■ This Court is not persuaded by Tucker's argument. Rather, the Third Circuit's opinion in United States ex rel. Allison v. New Jersey, 418 F.2d 332

(1969), cert. denied 400 U.S. 850, 91 S. Ct. 68, 27 L.Ed.2d 88 (1970) is persuasive in its holding that Massiah is not retroactive. In that case, the factors to be considered for retroactivity[2] were examined thoroughly and were summarized:

> a new rule should be retroactive if it strongly supports the fact-finding process, although important countervailing considerations may be decisive even in the case of rules closely identified with trial reliability.

*Allison, supra* at 341. The *Allison* Court then went on to hold that although *Massiah* appears to be concerned at least to some extent with protecting the effectiveness of the right to counsel, a matter closely identified with trial reliability, in substance *Massiah* affords limited protection to that right.

> The real concern of *Massiah*, therefore, must be with interrogation * * *. This being so, it seems clear that *Massiah* should not apply retroactively as an abuse of a party's rights during interrogation, once perpetrated, cannot be swept away and retroactivity would not further the main purpose *Massiah* was designed to serve. Any effect *Massiah* may have in improving the truth-determining process through the prevention of coercive statements * * * simply duplicates the function of the rules requiring that only voluntary confessions be admitted into evidence. Thus, the trial reliability aspect of *Massiah* is not of primary significance. [Footnote omitted.]

*Allison, supra* at 344. It is the conclusion of this Court, therefore, that *Massiah* should not apply retroactively to Tucker's case.

■ The remaining grounds raised in this motion for a ruling that the state-

ments were inadmissible revolve around Tucker's mental capacity to make voluntary statements in June, 1959. This was not a case of a grueling "third degree" of a mentally retarded or incompetent person as in Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961) and Blackburn v. Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); but rather it was a perfectly proper limited interview. This Court heard sworn testimony of the FBI agent and is satisfied that Tucker willingly spoke about the crime.

His present counsel, however, would have this Court rule that Tucker was mentally incompetent to make any voluntary statement in June 1959 because he presently has a dull normal adult intelligence and is presently suffering from schizophrenia of the undifferentiated type in remission as well as a possible Ganser Syndrome. The record reveals, however, that there were no clinical manifestations of these maladies in June, 1959. On the contrary, there is every indication that Tucker was competent in 1959. Present counsel also urges this Court to speculate that because Tucker was awakened from sleep by the arresting agents and later complained of an upset stomach that he was physically ill at the time of the interview.

This Court is convinced that Tucker's will was not so overborne that his statements were not free and voluntary. They were the product of a rational intellect and a free will. Further, he was competent to and did make a knowing and intelligent waiver of his privilege against self-incrimination after having been advised of his rights. Tucker's statements were not taken in unlawful circumstances, nor was he incompetent to voluntarily and knowingly waive his rights and make these statements.

---

2. Those factors are: (1) whether the purpose underlying the new rule would be served by applying it to cases previously decided; (2) the probable effect on the administration of justice resulting from retroactive application; and (3) the pos-

sible reliance by police, prosecutors and the courts upon a prior state of the law. United States ex rel. Allison v. New Jersey, 418 F.2d 332, 336 (3d Cir. 1969), cert. denied 400 U.S. 850, 91 S.Ct. 68, 27 L.Ed.2d 88 (1970).